**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **ROBERT ROLLO,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 5:17-cv-0645-FB** |
| | § | |
| **GEORGE P. ESCOBEDO; CARABIN &** | § | |
| **SHAW, P.C.; CARABIN SHAW,** | § | |
| **Defendants.** | § | |

**DEFENDANT GEORGE P. ESCOBEDO'S RESPONSE TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

GREG K. WINSLETT
State Bar No. 21781900
RICHARD L. SMITH, JR.
State Bar No. 18671200
BRENT LEE
State Bar No. 24036959
QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)
gwinslett@qslwm.com
rsmith@qslwm.com
blee@qslwm.com
**ATTORNEYS FOR DEFENDANT
GEORGE P. ESCOBEDO**

## <u>TABLE OF CONTENTS</u>

Page

I.    Summary of Argument .................................................................................. 1

II.   Undisputed Facts ......................................................................................... 3

      A.  Plaintiff's injuries were disputed ...................................................... 3

      B.  Plaintiff's mediation agreement and belief that Escobedo had done wrong ..................... 4

      C.  Plaintiff's decision to settle and strategy for additional compensation ........................... 6

III.  Argument & Authority .................................................................................. 8

      A.  Plaintiff's failure to present expert testimony is fatal ...................................... 8

      B.  The statute of limitations bars Plaintiff's causes of action ................................. 13

      C.  Plaintiff's breach of fiduciary duty claim is a recast negligence claim ....................... 16

      D.  Plaintiff is judicially estopped from asserting the settlement is inadequate ................... 18

Certificate of Service .................................................................................... 21

George P. Escobedo ("Escobedo") files this response to Plaintiff's Cross-Motion for Summary Judgment [Doc. 74] (the "Motion") and respectfully shows that Plaintiff's Motion fails on multiple, independent grounds. Escobedo filed his Motion for Summary Judgment on January 8, 2019. [Doc. 59] Plaintiff filed his response and Motion on April 1, 2019. Escobedo is simultaneously filing his reply supporting his motion and this Response. This brief largely tracks the argument in Escobedo's motion and reply due to the overlapping issues.

As a preliminary matter, Escobedo objects that the Plaintiff's 50-page Motion (with improper line spacing) far exceeds the 20-page limit. L.R. CV-7, 10(a). For the most part, the Motion reflects nothing more than opposing counsel's conclusory opinions concerning Rollo's malpractice claims and the relative credibility of the evidence in the underlying Department of Labor ("DOL") proceeding. It simply is not possible to address and correct the Motion's numerous mischaracterizations and errors contained in the space permitted for response.[1] Fortunately, it is not necessary to wade through Plaintiff's factual inaccuracies and conclusory arguments to conclude that Plaintiff is not entitled to summary judgment and that summary judgment is, in fact, appropriate in favor of Defendants on the record presented.

## I.    SUMMARY OF ARGUMENT

---

[1] For example, Plaintiff argues Escobedo did not know which law applied. This is false. Plaintiff quotes Escobedo stating in shorthand the case was is in the New York jurisdiction. Resp. 23. This was accurate. The filings occurred in N.Y. and federal law applied. Mot. Ex. 2 at 34:1-9; 115:17-116:16. The DOL's OWC N.Y. office handled the claim since Plaintiff lived outside the U.S. https://www.dol.gov/owcp/dlhwc/lsindustrynotices/industrynotice122.htm.

"Plaintiff claims that his case should never have been settled." Mot. 4. But Plaintiff's claim is an attempt to revise history. Unknown to Escobedo, Plaintiff's agreement to settle the DOL claim was part of Plaintiff's scheme to immediately resolve the claim and obtain the benefits of the settlement without risk while continuing to pursue additional recovery before the DOL and in this suit. Unsurprisingly, the law does not permit a plaintiff to engage in such a scheme. Under the doctrine of judicial estoppel it is well settled that Plaintiff cannot play fast and loose by maintaining one position to receive the benefits of the settlement, while also maintaining an inconsistent position in an effort to obtain additional recovery against his lawyer in a malpractice claim.

Moreover, Plaintiff cannot present any evidence of a breach of duty or proximate cause, which Plaintiff must prove by competent expert testimony, due to his failure to designate an expert or present any expert testimony in support of his Motion. Whether Escobedo's representation and advice satisfied the applicable standard of care in connection with the settlement of Plaintiff's DBA Claim or caused damage are not matters within the common knowledge of jurors – or even most attorneys.

In addition, Plaintiff's breach of fiduciary duty claim is unsupportable, and in any event, is an impermissible attempt to fracture his legal malpractice claim into other causes of action to avoid the applicable two-year statute of limitations for malpractice claims. Thus, regardless of the label alleged, Plaintiff's claim is barred by the two-year statute of limitations.[2] Immediately after signing the September 6, 2013 mediation agreement, Plaintiff believed the agreed compensation was insufficient, that Escobedo's representation was inadequate, and that he had been wronged. Plaintiff knew he could refuse to sign the settlement agreement and withhold consent to entry of

---

[2] Doc. #26 (Am. Compl.) ¶ 17. Escobedo requests the Court to take judicial notice of filings.

the compensation order even after signing the settlement agreement. Nevertheless, Plaintiff chose to proceed with the settlement and submit it to the DOL for approval.

The Appendix in Support of Escobedo's Response to Plaintiff's for Summary Judgment and its documents are incorporated into this motion by reference.

## II.    UNDISPUTED FACTS

### A.  Plaintiff's injuries were disputed.

The work accident injured Plaintiff's left foot. Resp. 6. Ex. 1 42:9-18. Years after the left foot injury Plaintiff began experiencing low back and neck pain. *Id.* 110:7-9. Plaintiff knew that connecting the neck and back pain with the foot injury would be favorable for his claim. *Id.* 108:18-109:1. Escobedo explained the strategy was to prove the use of the crutches somehow aggravated the age-related conditions in an effort to receive continuing compensation rather than the limited compensation for a scheduled foot injury. *Id.* 89:12-90:4; Ex. 4 ¶14. However, the carrier's doctor, Dr. Richmond, offered unfavorable opinions that the low back and neck pain were not connected with the foot injury. Ex. 1 112:8-21; Ex. 2 67:5-68:15.

Plaintiff sought favorable opinions from his treating providers to support the argument that he was permanently disabled due to back and neck pain. Ex. 1 108:3-22; *see, e.g.,* Ex. 8 (continuing lobbying efforts for opinions and noting counsel unhappy and wants letter that crutches caused spine complaints). Nevertheless, Plaintiff's own orthopedic surgeon, Dr. Gibson, opined that the MRI scan showed degenerative disc disease and opined "it is unlikely that the changes in your neck were a consequence of such an injury." Ex. 1-J. After follow-up by Rollo for a different opinion, Dr. Gibson reiterated that the degenerative changes to the cervical and lumbar spine were "chronic and probably unrelated to your trauma." Ex. 1-K. The only symptom that "may" have been related was "slight" immobility leading to "some" neck stiffening. Mot. Ex. 1-J.  Dr. Gibson

did not state this possible stiffening was the probable result of the "slight" immobility or resulted in a disability. Dr. Richmond opined that Plaintiff's cervical complaints were unrelated to the foot injury and, while the back pain "could be" aggravated by the injury and postural defects and deconditioning, the condition should resolve with restoring gait and a "brief course of physical therapy." Ex. 1-H App. at 123-24.

Prior to mediation, Plaintiff obtained a cursory, handwritten note from his general practitioner stating that in his (non-specialist) opinion, Plaintiff would never work again as a result of "progressive problems." Ex. 1 154:20-155:16; Ex. 1-A. Conspicuously absent from the note is an opinion that the low back and neck conditions were aggravated by the foot injury or that a foot injury prevented Plaintiff from working. Ultimately, Dr. Richmond opined that the foot injury did not preclude Plaintiff from performing sedentary work in the future. Pl. Mot. Ex. 3 at 2. While not well developed in the DOL claim because discovery had not been completed, the evidence developed showed that Plaintiff faced challenges to his claimed disability. Ex. 1 110:7-9, 112:8-18; App. Ex. 1-H at App. 94, 97-101; Ex. 2 67:5-68:15; 176:5-23. In addition to the medical records, Plaintiff went to Disney in Paris prior to settlement (and more recently travelled to Edinburgh and sat through a full day's deposition). Ex. 1 at 67:4-69:9; 304-05. Plaintiff acknowledged that if the claim had been tried, the judge could have sided with the opinion of one physician or another or potentially a mix of opinions. Ex. 1 201:14-24.

**B. Plaintiff's mediation agreement and belief that Escobedo had done wrong.**

The parties mediated the case on September 6, 2013 before mediator/claimant attorney Paul Doolittle.[3] The carrier disputed the liability and the average weekly wage. Ex. 1 186:3-21; *see* Ex. 2 68:5-15; 91:9-92:5. Plaintiff agreed to settle the claim at mediation and signed a

---

[3] Ex. 1 158:8-10; Ex. 2 106:9-12; 116:17-21; *see* https://www.pauldoolittlelaw.com/.

**DEF. ESCOBEDO'S RESP. TO PLAINTIFF'S MOT. FOR SUMMARY JUDGMENT**          **Page 4**

mediation agreement. Ex. 2 158:14-21; Ex. 1-B. The mediation agreement provided for payment to Plaintiff in "full settlement of all past, present and future compensation" and release of all claims. Ex. 1-B. Plaintiff knew a formal settlement agreement would be drafted later and presented to him for signature. Ex. 1 173:25-174:14; 197:17-198:8.

Plaintiff became displeased with the mediation agreement "almost immediately." Ex. 1 180:16-19. By September 9, 2013, within three days of mediation, Plaintiff and his wife had calculated compensation that would be received under the mediation agreement, and Plaintiff was unhappy with the settlement and Escobedo's representation. Ex. 1 181:6-21. By that time he (1) believed compensation under the mediation agreement would be substantially less than what he had been receiving for the DBA claim and would have received in the future if he prevailed on his claim; (2) believed he would never work again and should continue receiving the same compensation payments until he was at least 82 years of age; and (3) believed he had been cheated in the agreement and that Escobedo inadequately represented him at mediation and done wrong.[4]

In a September 9, 2011 email to his nurse case manager and friend working on the claim, Plaintiff stated the mediation agreement was a "f***ing rip-off" and questioned the legal course he could take to pursue the claim with the DOL.[5] Plaintiff was dissatisfied to the point of referring to Escobedo as a "jack-a**" in a September 11, 2013 email to his nurse case manager. Ex. 1 203:24-204:5. The case manager suggested Plaintiff speak with someone else about the matter, and Plaintiff was already considering hiring another attorney. Ex. 1 194:9-14; 195:2-11.

By September 10, 2013, within four days of mediation, Escobedo had advised Plaintiff he could still elect to try the claim to the DOL despite the signed mediation agreement. Ex. 1 198:18-

---

[4] Ex. 1 84:12-16; 181:6-21; 187:24-188:5; 192:4-6; 193:5-15; 197:11-16; 209:1-11; 299:16-19.

[5] Ex. 1 184:23-185:5; 187:3-18; 188:21-189:11; 189:23-190:10, 17-20; 192:7-21; 197:8-10.

199:15; 207:6-23; 214:17-20. Plaintiff had not received the draft settlement agreement and could still decide whether to sign a settlement agreement. Ex. 1 205:19-24; 206:16-20; 20 C.F.R. § 702.243(b). On or about September 11, 2013 Plaintiff received the draft Agreed Settlement Pursuant to Section 8(i) of the Longshore and Harbor Workers' Compensation Act ("settlement agreement") and had a month to consider whether to sign it. Ex. 1 212:3-15. Escobedo knew Plaintiff was having second thoughts about whether to proceed with settlement and advised:

> I think this is probably the best settlement you'll get from the Carrier . . . can it be better? Of course, but we'll be going into unchartered territory and I think more risk for you.

Ex. 1 215:6-19; Ex. 1-C. Plaintiff knew he could still proceed with the claim. Ex. 1 215:20-23.

Due to dissatisfaction with Escobedo's advice, Plaintiff began a post-mediation campaign of contacting other parties to argue his position, negotiate a higher settlement, or seek opinions on whether he should settle. Ex. 1 218:3-8; 222:4-11; 233:16-19; Ex. 1-D. This included the mediator, annuity broker, and DOL representative (claims examiner) in September 2013. Ex. 1 209:13-16; 210:9-12; 228:14-21; 247:8-248:10. Plaintiff informed the DOL that he was not satisfied with the mediation agreement or Escobedo's representation and asked for advice. Ex. 1 219:10-220:22. The DOL representative stated Plaintiff could either (1) accept the mediation agreement or (2) take the claim to trial. Ex. 1 220:23-221:12; *see* Ex. 4 ¶9. The DOL representative informed Plaintiff of the 30-day deadline to challenge a compensation order. Ex. 1 296:13-297:22. Plaintiff also contacted about six attorneys in the U.S. to retain an attorney to try the claim before the DOL. Ex. 1 229:4-24; 230:22-231:2. None of the attorneys accepted the representation. Ex. 1 230:1-6.

### C. Plaintiff's decision to settle and strategy for additional compensation.

On September 24, 2013, Plaintiff decided to accept the mediation agreement, sign the settlement agreement, and settle the claim. Ex. 1 234:19-236:11. He knew the settlement had to be

submitted to the DOL for approval. *Id.* 237:10-21; 262:11-15. But unknown to others, Plaintiff's strategy was to allow the DOL to approve the settlement agreement, take the money provided for in the agreement, and later challenge the agreement to obtain additional compensation.[6]

Plaintiff reviewed the draft settlement agreement carefully to ensure he understood it. Ex. 1 240:19-23. The agreement provides for total compensation of $943,500, with $300,000 being paid by lump sum, $35,000 for attorney's fees, and the remainder paid over 25 years through an annuity. Ex. 1 255:6-12; Ex. 1-H at App. 101. The settlement agreement states the parties have "a *bona fide* disagreement regarding the extent of Claimant's alleged disability," "have reached an agreement for the settlement of past and future indemnity benefits and future medical benefits," and that Plaintiff understands and approves the agreement.  Ex. 1-H at App. 97, 101, 104.

Plaintiff had complaints with the recitation or completeness of certain facts contained in the settlement agreement, but his primary concern was the potential effect it may have on the compensation already agreed upon. Ex. 1 238:14-239:25; 239:19-22; Ex. 1-G. Plaintiff signed the settlement agreement and related annuity forms on or about October 9, 2013.[7] Despite his decision to sign the settlement agreement and submit it for DOL approval, Plaintiff was still ambivalent about whether to proceed. Ex. 1 251:9-12. On November 13, 2013 Plaintiff told his nurse case manager friend—but no one else—that he may still stop the DOL from approving the settlement agreement. Ex. 1 250:17-23; 251:3-12. Nevertheless, he never did so. Ex. 1 262:24-263:2.

The DOL approved the agreement and ordered the agreed compensation paid in a November 21, 2013 compensation order, which Plaintiff reviewed shortly thereafter. *Id.* 54:14-17; 254:12-25; 255:20-25; Ex. 1-H. Plaintiff still felt the compensation was inadequate, Escobedo had

---

[6] Ex. 1 235:15-236:21; 237:10-21; 262:11-23; 279:25-280:6; *see* Ex. 3 ¶2.

[7] Ex. 1 242:6-19; 244:11-16; 258:6-16; 259:16-24 & Exs. 1-E, F, H (App. 103-04).

provided flawed services, someone else could have done a better job, and the deal was too good for the carrier. Ex. 1 264:6-21; 267:16-19. Escobedo's representation of Plaintiff ended with the entry of the order. *Id.* 286:2-13, 19-25. Plaintiff accepted the ordered $300,000 lump sum payment in late 2013 or early 2014 and all subsequent annual payments. Ex. 1 256:12-16; 267:16-268:10.

The November 21, 2013 compensation order became final 30 days after its filing. 33 U.S.C. § 921(a); Ex. 1-I; Ex. 6 at App. 265-66. Nevertheless, Plaintiff again contacted the DOL in mid-2014 to obtain additional compensation.[8] The DOL informed Plaintiff that "per the settlement agreement the carrier was discharged from liability under this Act," which Plaintiff understood meant he no longer had a claim against the carrier. Ex. 1 279:15-24. No later than August 19, 2014, Plaintiff had consulted with other attorneys and discussed, at a minimum, his settled DBA claim. Ex. 1 283:2-284:6. By November 2014, Plaintiff had consulted with attorneys specifically about pursuing Escobedo and Carabin & Shaw. Ex. 1 294:21-295:9.

The discovery deadline in this case expired December 4, 2018. [Doc. 51] Plaintiff never designated an expert to address the standard of care, breach or proximate cause. [Doc. 37] App. 5 ¶4.

## III.    ARGUMENT & AUTHORITY

### A.  Plaintiff's failure to present expert testimony is fatal.

Plaintiff argues Escobedo is liable for malpractice and breach of fiduciary duty for failing to adequately advise him regarding the strength of his claim or the settlement and that the claim should not have been settled. *Id.* ¶¶1,11-17. As discussed above, a legitimate dispute existed over the extent and cause of the claimed disability and the average weekly wage. The claim had not been set for hearing and further discovery—the content of which Plaintiff cannot offer expert legal

---

[8] *See, e.g.,* Rollo Tr. 272:23-274:9 (7/30/14); 279:5-280:13 (7/31/14); 280:18-281:9 (8/5/14).

evidence—would have been conducted. Mot. Ex. 3 ¶4. Accordingly, a factual dispute existed with respect to the DOL claim.

More significantly, Plaintiff must prove Escobedo breached a duty owed to Plaintiff and proximately caused damage to Plaintiff. *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004); *Rogers v. Zanetti*, 517 S.W.3d 123, 128-29, 136-37 (Tex. App.—Dallas 2016), *aff'd*, 518 S.W.3d 394 (Tex. 2017). The "suit-within-a-suit" principle requires proof that Escobedo's alleged negligence caused an unfavorable outcome and Plaintiff would have prevailed without a breach by Escobedo. *Rogers v. Zanetti*, 518 S.W.3d 394, 401 (Tex. 2017).

As a practical matter, legal malpractice cases almost always require expert testimony to provide the jury with an adequate basis for making the determination on breach of duty and causation.[9] As explained in *Elizondo v. Krist*, 415 S.W.3d 259, 270 (Tex. 2013):

> We have in the past noted that proof of attorney malpractice requires expert testimony, because establishing such negligence requires knowledge beyond that of most laypersons.  The same is true of proof of damages under a theory that a settlement was inadequate.

Similarly, the Texas Supreme Court recently explained that "[g]enerally, in a legal malpractice case, expert witness testimony is required to rebut a defendant's motion for summary judgment challenging the causation element." *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 679 (Tex. 2017).

This principle applies to alleged negligence resulting in an unfavorable result in a legal proceeding because the wisdom and consequences of tactical choices are beyond the common understanding of most jurors. *See, e.g., Alexander*, 146 S.W.3d at 119-21 (alleged negligence in a

---

[9] *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990) ("In most legal malpractice cases, 'expert testimony is necessary to establish the standard of care since only an attorney can competently testify to whether the defendant comported to the prevailing legal standard.'" "Similarly, breach of a fiduciary duty or a conflict of interest requires proof of expert testimony.").

bankruptcy proceeding). This principle also applies to settlement decisions because "the wisdom of entering into settlement discussions is tactical and not within the common understanding of most jurors."[10] The rare exception to the rule requiring expert testimony is when the breach is obvious to a lay person, such as when an attorney allows limitations to run on a claim. *See, e.g., Floyd v. Hefner*, 556 F. Supp. 2d 617, 643 (S.D. Tex. 2008). Consequently, courts routinely hold that malpractice and breach of fiduciary claims fail as a matter of law when the plaintiff fails to designate an expert or the expert's opinions are legally insufficient.[11]   Stated otherwise, when a plaintiff fails to provide expert testimony on the suit-within-a-suit requirement as to the standard of care, breach or proximate cause, summary judgment in favor of the defendant is proper. *Rangel v. Lapin*, 177 S.W.3d 17, 23 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *Gammill v. McElroy*, No. 2-02-388-CV, 2003 WL 22674728, at *3 (Tex. App.—Fort Worth Nov. 13, 2003, no pet.) (mem. op.).

It is undisputed here that Plaintiff has not presented any expert testimony on these elements. Thus, the only issue is whether this case is one where expert testimony is required. Because Texas cases uniformly hold that expert testimony is required in cases like this, summary judgment is proper.

Plaintiff offers three arguments for why expert testimony is not required. First, he claims the issues in this case are "not dissimilar" to the situation when a lawyer fails to file suit within the

---

[10] *Smith v. Aldridge*, 2017 WL 1071246 at 4, 6 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (holding summary judgment was proper on the malpractice and fiduciary duty claims due to the lack of expert testimony); *see Elizondo*, 415 S.W.3d at 266 (alleged inadequate settlement).

[11] Escobedo's motion cites numerous examples of this. Escobedo Mot. 11 n.10. [Doc. 59]

**DEF. ESCOBEDO'S RESP. TO PLAINTIFF'S MOT. FOR SUMMARY JUDGMENT**                    **Page 10**

limitations period. Mot. 37. This argument is frivolous. Plaintiff cannot cite a single opinion holding that expert testimony is not required where the malpractice claims are based on the attorney's alleged failure to properly prosecute a complicated claim and provide proper advice concerning a proposed settlement, particularly where, as here, Plaintiff's damage theory is dependent upon a showing that the result in the underlying contested matter would have been more favorable for the plaintiff absent the alleged malpractice. Of course, the conclusory opinions offered by opposing counsel throughout his Motion are not evidence.

Second, Plaintiff argues that no expert testimony is necessary because the underlying case would have been tried in an administrative proceeding and decided by an administrative law judge, not a jury. This purported distinction is irrelevant. The seminal case on the expert testimony requirement in this context, *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113 (Tex. 2004), involved a trial before a bankruptcy judge. The question was whether, in reasonable probability, a bankruptcy judge would have decided the underlying adversary proceeding differently absent the alleged malpractice. The Texas Supreme Court unequivocally held that expert testimony was required. *Id.* at 121. Even if this malpractice case were tried to the Court, expert testimony would be required. *Saulsberry v. Ross*, 485 S.W.3d 35, 46 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *Abdelhak v. Farney*, 2007 WL 4180133 at 5 (Tex. App.—San Antonio 2007, no pet.).

Incredibly, relying upon *Alexander*, Plaintiff argues that expert testimony is <u>not</u> required when the alleged malpractice involves a case within a case. Resp. at 39. The purported basis for this argument is the court's citation of *Whitley v. Chamouris*, 574 S.E.2d 251 (Va. 2003), allegedly with "approval." This is the exact <u>opposite</u> of what *Alexander* held. *Alexander* cites various opinions holding expert testimony is necessary when causation is beyond a jury's common

understanding and then noted a single case, *Whitley*, as a "*but see*" case before affirming the rule that expert testimony is necessary. *Id.*

Not surprisingly, Texas courts apply the same case-within-a-case expert testimony requirement to situations where the alleged malpractice occurs in prosecuting the client's administrative claim. *Duerr v. Brown*, 262 S.W.3d 63 (Tex. App.—Houston [14th Dist.] 2008, no pet.). *Duerr* involved the attorneys' alleged failure to properly pursue the client's claim for additional benefits through an administrative claims process established in connection with a class action settlement against the manufacturer of an artificial hip. *Id.* at 72-73. The court affirmed summary judgment in favor of the defendant attorneys because the plaintiff failed to timely present sufficient expert testimony based on the well-settled rule requiring such evidence when the alleged legal malpractice involves the results of prior litigation. *Id.* at 76-77.

Just as in any situation where an attorney allegedly committed malpractice in connection with prosecuting an underlying claim, the fact finder in this case must determine whether the result in a compensation proceeding before the administrative law judge would have yielded a more favorable result. The administrative law judge would have acted as the finder of fact, resolving factual disputes and weighing the credibility of the witnesses. *See Duhagon v. Metro. Stevedore Co.*, 169 F.3d 615, 618 (9th Cir. 1999) (per curiam). There simply is no reason why the longstanding requirement for expert testimony should not apply to this circumstance.

Plaintiff also argues, citing *Millhouse v. Wiesenthal*, 775 S.W.2d 626, 627-28 (Tex. 1989), that this case should be governed by the rule applicable to certain claims for <u>appellate</u> legal malpractice where expert testimony is unnecessary. *Millhouse* is inapposite. That case involved an attorney's failure to properly prosecute an appeal where the question depended upon an analysis of the law and the procedural rules, not the outcome of trial resolving fact issues. *Id.* Plaintiff

cannot cite a single case extending *Millhouse* to a case like this. *Haddy v. Caldwell*, 403 S.W.3d 544, 547 n.3 (Tex. App.—El Paso 2013, pet. denied) (rejecting argument that *Millhouse* holds expert testimony is not required in a malpractice case arising from prior litigation).

In summary, the only expert evidence in the record is from Kenneth Engerrand, a specialist in this area of the law who is clearly qualified and offers a detailed explanation as to why Escobedo did not breach the standard of care or cause any damage to Plaintiff. Ex. 4. Plaintiff's motion fails as a matter of law.

### B.  The statute of limitations bars Plaintiff's causes of action.

Plaintiff filed suit more than two years after the action accrued in violation of the applicable statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.003(a); *Won Pak v. Harris*, 313 S.W.3d 454, 459 (Tex. App.—Dallas 2010, no pet.); Doc. #26 ¶2 (NY suit filed 9/7/16). Plaintiff complains the claim should have never settled and Escobedo provided faulty advice in connection with the settlement. Doc. 26 ¶¶1, 14-15. As discussed more fully in the Undisputed Facts, within three days of the September 6, 2013 mediation Plaintiff was unhappy with both the compensation he agreed to at mediation and Escobedo's representation, felt he had been cheated, and felt Escobedo did something wrong.[12] Plaintiff sought opinions from third parties, including attorneys and the DOL.[13] Plaintiff still decided to sign the settlement agreement and allow it to be entered by the DOL.[14] On November 21, 2013, the DOL approved the settlement agreement and ordered compensation to be paid, and Plaintiff received and reviewed the order shortly thereafter. Ex. 1-H; Ex. 1 254:12-21; 255:20-25.

---

[12] Ex. 1 84:12-16; 180:16-19; 181:6-21; 187:11-188:5; 192:2-6; 193:5-15; 197:11-16.

[13] *Id.* 209:13-210:12; 218:3-8; 219:10-12; 220:4-221:13; 228:18-21; 229:4-230:6; 230:22-231:2.

[14] *Id.* 235:13-19; 236:14-21; 279:25-280:6; Doc. #26 ¶11; App. Ex. 1-H at App. 103.

Plaintiff argues in conclusory fashion that he simply could not have discovered his cause of action against Escobedo because this case involves legal issues that are virtually impossible for a lay person to understand. Mot. 48. This is not the standard. In a case like this, the cause of action accrues when the client discovers or should have discovered the facts establishing the elements of a cause of action. *Willis v. Maverick*, 760 S.W.2d 642, 646 (Tex. 1988). "Once the fact of misconduct becomes apparent, it can no longer be ignored, regardless of the nature of the relationship," fiduciary or otherwise. *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996). "The harm need not be finally established or an inevitable consequence of the conduct. Rather, the specific and concrete event which follows the defendant's conduct need raise only a risk of harm to [the plaintiff's] interest." *Zidell v. Bird*, 692 S.W.2d 550, 557 (Tex. App.–Austin 1985, no pet.); *see also Estate of Jobe v. Berry*, 428 S.W.3d 888, 902 (Tex. App.—Texarkana 2014, no pet.); *Beck v. Looper, Reed & McGraw, P.C.*, No. 05–05–00724–CV, 2006 WL 1452108, *3 (Tex. App.— Dallas May 26, 2006, no pet.) (mem. op.); *Won Pak v. Harris*, 313 S.W.3d 454, 459 (Tex. App.— Dallas 2010, pet. denied); *Murphy v. Mullin, Hoard and Brown, L.L.P.,* 168 S.W.3d 288, 292-93 (Tex. App.—Dallas 2005, no pet.). The discovery rule is a very limited exception that defers the accrual of a cause of action only until the injury was or could have reasonably been discovered. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929 (Tex. 2011).

Plaintiff's own testimony establishes that he knew of the claimed injury and Escobedo's allegedly wrongful conduct even before entry of the compensation order. Plaintiff was not simply unhappy; he believed the settlement compensation was less than what he was entitled to and that he had been "cheated." Mot. 5 & n.3; Ex. 1 102:21-23, 251:13-16. Most significantly, he believed that Escobedo had committed a wrong prior to entry of the compensation order:

> Q. So at this point on September 9, 2013, you are unhappy with the settlement agreement, you believe you have been wronged by the carrier and Mr. Escobedo

and you are looking at potential legal procedures by which you can reverse what
you view as an unfortunate agreement; is that fair?
A. Yes.

Ex. 1 193:5-11. Plaintiff repeatedly reaffirmed that he continued to hold this belief:

Q. So it became clear to you within days of the mediation that the settlement
compensation you had agreed to was far short of what you would be getting if you
had continued receiving your disability payments as you had been receiving them?
A. Yes.
Q. You came to that realization and realized that George did not adequately
represent you at the mediation?
A. Yes.

Ex. 1 181:12-21; *see also id.* 181:18-21; 187:14-188:5; 215:6-13; 272:23-274:5 (7/2014); 280:18-

282:12 (8/2014); 195:5-8; 203:6-13; 203:23-204:7; 220:4-18; 264:6-21; 267:16-19; 296:13-22;

299:16-22. In addition, Plaintiff sought advice from the DOL and others, spoke with new counsel

to represent him before the DOL entered the order, and attempted to negotiate an additional

$300,000 to settle his DOL claim. Ex. 1 194:3-14; 195:2-11; 209:13-16; 210:9-12; 218:3-8;

219:10-220:22; 222:4-16; 228:14-231:2; 247:8-248:10. This suit is the culmination of Plaintiff's

undisclosed plan to later seek additional compensation. Mot. 7; *see also* Rollo Tr. 236:14-21;

272:23-274:9; 280:18-282:12.

Plaintiff's claim that it is virtually impossible for a lay person to understand the legal issues

is irrelevant. In *In re Jordan*, the Texas Supreme Court rejected this very argument:

Texas law has never required that a plaintiff know all the essential facts before a
cause of action exists. To the contrary, a cause of action accrues for limitations
purposes when a claimant learns of an injury, even if the rest of the essential facts
are unknown.

249 S.W.3d 416, 421-22 (Tex. 2008). The discovery rule "turns on whether the injured person is

aware that she has an injury and that it was likely caused by the wrongful acts of another."

*Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834–35 (Tex. 2018). Knowing all the ways

in which the defendant was at fault or when the full effects of the injury occur is irrelevant. *Id.* The

discovery rule "tolls limitations only until a claimant learns of a wrongful injury." *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners*, 146 S.W.3d 79, 93–94 (Tex. 2004). Plaintiff is not required to know the specific cause of the injury, the party responsible for it, the full extent of the injury, or the chances of avoiding it. *Id.*

Here, no credible argument can be made that Plaintiff did not know of his alleged injury or of Escobedo's allegedly inadequate representation before the compensation order was signed. He has admitted that he did. Therefore, the cause of action accrued, at the very latest, when the DOL issued the compensation order on November 21, 2013. Because Plaintiff did not initially file suit against Escobedo in New York until September 7, 2016 (well over two years after discovery), the claims are barred by limitations even under the most generous interpretation. The allegation that the representation continued after this discovery is irrelevant. *Est. of Degley v. Vega*, 797 S.W.2d 299, 303 & n.3 (Tex. App.—Corpus Christi 1990, no writ).

### C.  Plaintiff's breach of fiduciary duty claim is a recast negligence claim.

Plaintiff's attempt to recast the claim as a breach of fiduciary duty to avoid limitations is unavailing. Texas courts prohibit a plaintiff from dividing or fracturing a negligence claim into other claims. *Saldana-Fountain v. Chavez Law Firm*, 450 S.W.3d 913, 918 (Tex. App.—El Paso 2014, no pet.). The substance of the claim—not its title—is relevant to determine whether the plaintiff pleads only negligence or a viable separate claim. *Id.* at 918. In analyzing the issue, Courts focus on the "gist," "substance," or "gravamen" of the claim:

> If the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim.

*Id.*; *Won Pak*, 313 S.W.3d at 457. In contrast, the plaintiff can pursue a different claim if the claim is more appropriately classified as another claim. *Saldana*, 450 S.W.3d at 918. A complaint merely

implicating a fiduciary duty is insufficient because the standard of care in negligence cases is often defined by characteristics inherent in the fiduciary duty. *Won Pak*, 313 S.W.3d at 457-58.

Plaintiff does not address the fact that he has improperly fractured his legal malpractice claim into an additional claim for breach of fiduciary duty. Instead, he generally argues that Escobedo breached his fiduciary duty by allegedly arranging a high-pressure mediation, forwarding the carrier's threats to stop payment if Plaintiff failed to sign the agreement, providing incorrect information at mediation regarding future vs. present value of compensation, misrepresenting to the DOL that they had read the agreement (which they both did) without seeing exhibits, and submitting an allegedly fraudulent document to the DOL.

Besides being incorrect, these alleged "breaches of fiduciary duty" are nothing more than a restatement of Plaintiff's claim for malpractice; *i.e.*, that Escobedo allegedly failed to properly prosecute Plaintiff's claim for benefits and provide proper advice, resulting in Plaintiff agreeing to an allegedly inadequate settlement. [Doc. 26 ¶¶11, 14-15, 17] His complaint is really about the adequacy of the representation. Ex. 1 297:21-298:2; *see also id.* 270:14-271:5. This is the "gravamen" of the Complaint. *See Won Pak v. Harris*, 313 S.W.3d 454, 459 (Tex. App.—Dallas 2010, no pet.). Plaintiff's only suggestion that Escobedo favored his own interests in recommending the settlement is the allegation that he did so to collect his fee, but "an interest in the receipt of ordinary legal fees, while no doubt a pecuniary interest, is not an improper interest, and thus cannot ordinarily support a claim for breach of fiduciary duty." *Stanford Inv'rs Comm. v. Greenberg Traurig, LLP,* 2014 WL 12572881 at *7 (N.D. Tex. 2014) (citing *Murphy v. Campbell*, 241 S.W.3d at 699).

The above cited *Duerr v. Brown* opinion is also instructive on the application of the anti-fracturing rule in this case. 262 S.W.3d 63 (Tex. App.—Houston [14th Dist.] 2008, no pet.). *Duerr*

recognized the well settled rule that when the crux of the complaint is that the lawyer did not provide adequate representation, the claim is one for legal malpractice regardless of the theory alleged. *Id.* at 70-71. Just like Plaintiff in this case, the plaintiffs in *Duerr* attempted to support their fiduciary duty claim with allegations that the attorneys filed improper information in support of the benefit claim and made misrepresentations regarding the benefits the plaintiff would receive. *Id*. at 71-72. After noting that the question of impermissible fracturing is a question of law for the court, the court held that such allegations amount to nothing more than a claim for legal malpractice. *Id.* The same result is appropriate here because the alleged breaches are all attributable to the alleged mishandling of Plaintiff's DOL claim and his belief that he received less than he should have received. No other damage is alleged. Accordingly, Plaintiff's fiduciary duty claim is nothing more than a thinly-veiled negligence claim and is, therefore, subject to the two-year statute of limitations.

Finally, even if these allegations could support a separate breach of fiduciary duty claim (which they cannot), Plaintiff still was required to present competent expert testimony as set forth above to survive summary judgment. *Kastner v. Martin & Drought, Inc.*, No. 04–07–00342–CV, 2009 WL 260601 at *6 (Tex. App.—San Antonio Feb. 4, 2009, pet. denied) (mem.op.). Accordingly, Plaintiff's breach of fiduciary duty claim is nothing more than a malpractice claim and fails under the statute of limitations.

### D.  Plaintiff is judicially estopped from asserting the settlement is inadequate.

Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in a legal proceeding. *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003). A party cannot advance an argument for convenience or gamesmanship and, after that argument has served its purpose, expect to play "fast and loose" with

the court and prevail on an inconsistent argument. *Id.* at 397. Judicial estoppel applies when (1) the party against whom it is sought asserts a legal position plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently. *In re Flugence*, 738 F.3d 126, 129 (5th Cir. 2013). Representations made regarding the party's claim or in connection with settlement may fall within the scope of the doctrine.[15] The prior statement need not be sworn. *Hall*, 327 F.3d at 397.

It is undisputed that Plaintiff made the conscious decision to go forward with the settlement based on his representations to the DOL that he was fully and finally settling a *bona fide* disagreement regarding the extent of his alleged disability, that the settlement was not procured by fraud or duress, and that he had carefully considered it and that it was in his best interests. Ex 1-H ¶32 at App. 101-04. Based on these express representations, Plaintiff asked the DOL to approve the settlement. *Id.* at 107. He admits that he did this to receive the substantial settlement benefits with the full knowledge and intent to implement a scheme where he would later challenge the settlement itself and obtain additional funds by taking positions that are directly contrary to the representation made to the DOL. Ex. 1 235:9-236:21; 237:10-21; 262:11-23; 279:25-280:6. The law does not permit such a scheme to succeed, and the Motion does nothing to alter this fact under the judicial estoppel doctrine.

Plaintiff incorrectly claims the Texas judicial estoppel doctrine applies, citing older Fifth Circuit opinions. Mot. 49. As more recent authority makes clear, the Fifth Circuit applies the

---

[15] *See, e.g., Watkins v. Bailey*, 484 Fed. Appx. 18, 23-24 (6th Cir. 2012); *In re Flugence*, 738 F.3d at 128, 130 (holding the plaintiff was estopped to assert her personal-injury claim when she had impliedly represented she had no claim by failing to disclose her claim in bankruptcy); *Hall*, 327 F.3d at 398-400 (holding plaintiff was estopped from arguing the defendant manufacturer was liable where plaintiff had previously represented that another manufacturer was responsible for the product and the court accepted the statements in ruling on motions).

federal judicial estoppel doctrine in cases pending in federal court. *Hall*, 327 F.3d at 394-95, 400; *see RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 859 (5th Cir. 2010); *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 332 n.18 (5th Cir. 2007). Judicial estoppel "is a matter of federal procedure," and a majority of federal courts apply the federal doctrine. *Hall*, 392 F.3d at 395. Such a result is clearly appropriate here as Plaintiff took his earlier position on a federal claim, in a federal proceeding and chose this federal forum in which to assert his contrary position.

Plaintiff's argument that his position was not taken in "court" is frivolous. Acceptance of a party's position by a non-Article III court or an administrative agency is sufficient.[16] Finally, Plaintiff's equity argument rings hollow in light of his admitted scheme to take one position to obtain agency approval and a completely opposite position later to obtain more benefits. This kind of duplicity is why the court in *Watkins v. Bailey* (a case strikingly similar to this one) applied the doctrine to prevent a plaintiff from asserting a malpractice claim against her attorney arising from the settlement of her child's medical malpractice claim when she had previously asserted in the earlier suit that the settlement was in the best interest of the child in order to obtain judicial approval. 484 Fed. Appx. 18, 23-24 (6th Cir. 2012). The case cannot be distinguished on any meaningful basis. Plaintiff's claims are barred by this equitable doctrine. Plaintiff is judicially estopped from arguing Escobedo is liable for an inadequate settlement that Plaintiff agreed to and requested be ordered by the DOL.

---

[16] *See, e.g., Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 604 (9th Cir. 1996) ("[M]any cases have applied the doctrine where the prior statement was made in an administrative proceeding, and we are not aware of any case refusing to apply the doctrine because the prior proceeding was administrative rather than judicial."); *MGM Ins. Co. v. Bexar County*, 211 F. Supp. 3d 923, 935 (W.D. Tex. 2016) (prior bankruptcy proceeding); *Everett v. Nat'l Union Fire Ins. Co.*, 857 F. Supp. 2d 611, 616 (S.D. Miss. 2012) (prior workers' compensation proceeding).

**DEF. ESCOBEDO'S RESP. TO PLAINTIFF'S MOT. FOR SUMMARY JUDGMENT**          **Page 20**

Respectfully submitted,

*/s/ Greg K. Winslett*

_____

GREG K. WINSLETT
State Bar No. 21781900
RICHARD L. SMITH, JR.
State Bar No. 18671200
BRENT LEE
State Bar No. 24036959
QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)
gwinslett@qslwm.com
rsmith@qslwm.com
blee@qslwm.com
**ATTORNEYS FOR DEFENDANT**
**GEORGE P. ESCOBEDO**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the above and foregoing instrument is being served electronically upon all counsel of record on this 1st day of May 2019, in accordance with the Federal Rules of Civil Procedure.

*/s/ Greg K. Winslett*

_____

GREG K. WINSLETT

3766281.1